UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DARRIN ROBINSON (#158443)                             CIVIL ACTION

VERSUS

STEVE C. RADER                                        NO. 11-0458-BAJ-RLB

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 20, 2013.

  RICHARD L. BOURGEOIS, JR.
  UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DARRIN ROBINSON (#158443)                                    CIVIL ACTION

VERSUS

STEVE C. RADER                                               NO. 11-0458-BAJ-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. The State of Louisiana has filed an Answer and a Response, and the petitioner has filed a Traverse to the State's Response. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Darrin Robinson, challenges his conviction and sentence of one year in prison, entered in 2008 in the 20th Judicial District Court for the Parish of East Feliciana, State of Louisiana, upon a plea of guilty to one count of possession of contraband within the confines of a penal institution, a violation of La. R.S. 14:402. The petitioner asserts that his Sixth Amendment right to counsel was violated when the trial court (1) impermissibly allowed him to waive his right to counsel without ascertaining that his waiver was knowing and voluntary, and (2) impermissibly interfered with the presentation of his case.

From a review of the state court record, it appears that the petitioner was arraigned on July 3, 2007, at which time the state court minutes reflect that "[t]he defendant's age was judicially determined to be 36 .... [t]he Court advised the defendant of the nature of the charge, of the nature of the proceedings and of the right to counsel .... [and] [t]he Court found that the defendant understood the nature of the proceedings." State Court Record at p. 1. Two weeks later, on July 17, 2007, the defendant again appeared in state court, with appointed counsel, for a

hearing in connection with then-pending pretrial motions.  At that time, the petitioner's attorney indicated to the trial judge that the petitioner wished to file several hand-written pro se motions, including a Motion for Self-Representation.  Id. at pp. 32-34.  After a brief discussion on the record, the trial court granted the petitioner's Motion for Self-Representation and relieved the petitioner's appointed counsel of any further responsibility in connection with the case.  No mention was made by the trial court, by the prosecution, or by the petitioner's attorney regarding the request which was included in the petitioner's motion to have standby counsel, i.e., to have "counsel to assist defendant only where needed."  Id. at p. 34.  The entirety of the colloquy is as follows:

> **BY THE COURT**: Ms Covington [petitioner's attorney], you have Darrin Robinson? Is Darrin Robinson here?
>
> **BY MS. COVINGTON**: Yes, Your Honor.  Mr. Robinson is a DOC inmate.  Mr. Robinson also has motions that he would like to file in proper person.  One is a Motion for Self Representation.  So it's my understanding that Mr. Robinson ...
>
> **BY THE COURT**: Mr. Robinson, do you want to represent yourself in this case because if you're going to represent yourself in the case, I'm going to take Ms. Covington off the case and let you represent yourself if you think you're qualified to do that.
>
> **A**: Yes, sir.
>
> **BY THE COURT**:    That's what you want to do?
>
> **A**: Yes, sir.  I have a motion for request for documents.  I have a motion for ...
>
> **BY THE COURT**: Well, don't you realize that Ms. Covington has already filed these motions for Discovery and Inspection, Criminal Records, Pending Charges, Brady motion, all of that, and all of these are set for hearing today?
>
> **A**: Sir, I understand she filed several motion for several documents, but I need particular documents because I want to present a certain defense, and I don't think she was aware of the extent of this case that I want to present.
>
> **BY THE COURT**: Well, I'll tell you want [sic] we're going to do, before I relieve Ms. Covington, let's take it from the top.  On your Discovery and Inspection, has the

2

>    State satisfied your motion?

**BY MS. COVINGTON:** Your Honor, I just received it this morning, and that's not one I've had an opportunity to look at especially when I found out Mr. Robinson wanted to represent himself.  I went over other cases.

**BY THE COURT**: All right.  I'll tell you what let's do, let's go ahead and you give all of those responses to Mr. Robinson.  I will relieve and release you from any further representation of Darrin Robinson, and if you'll go ahead and submit a motion and order to that effect and your billing on this case.  Let me see your motions, Mr. Robinson.  All right.  The first motion filed by Mr. Robinson is a Motion to be Held in the Parish Jail Pending Disposition of the Case.  Mr. Robinson, you are a DOC inmate?

**A**: Yes, sir.

**BY THE COURT**: And you're serving time for what offense?

**A**: For aggravated burglary.

**BY THE COURT**: All right I'm going to defer to the discretion of the Department of Corrections as to where you're housed, and I will deny your Motion to be Held in the Parish Jail Pending Disposition of the Case.  If you'll file this motion, Mr. Dart.

**A**: What I want to say ...

**BY THE COURT**: You can speak when I give you an opportunity.

**BY MS. JONES** [for the State]: Your Honor, if the State may note for the record that we object to the defendant being transferred to the parish jail to be held there.  I discussed this matter with Warden Newman, and on behalf of the East Feliciana Parish Jail, he objects to that.

**BY THE COURT**: Well, I've already denied the motion.

**BY MS. JONES**: Thank you, Your Honor.

**BY THE COURT**: The next motion before the Court is a Motion for Self Representation.  I've granted that motion.  You are now representing yourself, Mr. Robinson, and I've relieved Ms. Covington from any further responsibility on the case.  Note for the record that Mr. Robinson is being tendered and handed in open court the State's responses to the discovery and inspection and the Brady motion and the request for State's witness rap sheets.  Mr. Dart, if you will file this Motion for Self Representation.  The request for Production of Documents,

3

>
> we will schedule this matter for hearing on the 7th of August, and I will file the original request in the record with that setting and ask that a copy of this be immediately served on the DA's Office. Ms. Jones, if you will see to it that a subpoena <u>ad pros</u> is issued commanding Mr. Robinson's presence here in open court on August 7th. Mr. Dart, here's the motion. Do you have any other motions, Mr. Robinson?
>
> **A**: No, sir, but I wanted to say in response to my motion to be transferred ...
>
> **BY THE COURT**: I don't want to hear any argument on that. I'm not granting your motion. You're a DOC prisoner. You don't have the right to say that you're going to be housed in the parish jail, and I don't think this Court has authority to tell the Department of Corrections to house you in a particular jail. So I'm not going to listen to any argument on that motion. If you disagree with the Court's ruling, you can take it up to the First Circuit Court of Appeal.
>
> **A**: Can I immediately appeal that to the First Circuit?
>
> **BY THE COURT**: Yes, sir, if you file the appropriate paperwork.
>
> **A**: What procedures would I have to ...
>
> **BY THE COURT:** You're representing yourself, Mr. Robinson.
>
> **A**: Can we set a return date for me to take this up with the First Circuit?
>
> **BY THE COURT**: You file the appropriate paperwork, and I will be glad to set whatever return dates and so on are necessary, but I'm not going to give you legal advice. You're your own lawyer. That's what you asked for. All right, he can be returned to DCI.

<u>Id.</u> at pp. 42-45.

Over the course of the next six months, the petitioner attempted to obtain discovery of specific documentation from the State, specifically the production of his entire medical and institutional file, with the intention of presenting a defense that the charge asserted against him, of being in possession of a "shank" (homemade knife) in prison, was a fabrication and was the result of a retaliatory conspiracy in response to a lawsuit and grievances which the petitioner had filed against state correctional officers. The trial court reviewed the State's resulting document

4

submission <u>in camera</u> and ultimately ruled that the petitioner's institutional file did not contain any exculpatory evidence and that the discovery would not be allowed. In addition, the petitioner moved to be allowed to present at trial the testimony of 38 co-inmate witnesses and numerous state and federal officials, including Warden Burl Cain, Ass't Department Secretary Janitta Antionne, U.S. Congressman Richard H. Baker, U.S. Congressman William J. Jefferson, former U.S. Senator John Breaux, and F.B.I. Supervisor Leon J. Huss. At a hearing held in connection with this motion, the trial judge questioned the petitioner in chambers to ascertain whether the state and federal officials would provide any testimony that was necessary or relevant to the petitioner's case. Upon the petitioner's concession that these officials had not been present at the time of the charged offense and had merely been recipients of correspondence addressed by the petitioner, the trial court declined to issue subpoenas for the referenced witnesses. With regard to the 38 co-inmate witnesses, the trial court ascertained from the petitioner that while these co-inmates had allegedly been present at the time of the charged offense, the petitioner had not conferred with any of them and so did not know the substance of any testimony that they might provide. The trial judge ultimately agreed to travel to the petitioner's place of incarceration and to personally question the co-inmate witnesses (reduced by agreement from 38 to 10 in number) and determine whether they should be produced for trial. It appears from the record that the trial judge did in fact undertake this investigation and ultimately concluded that six of the proposed co-inmate witnesses would be subpoenaed for trial. See State Court Record (envelope "under seal").

      Finally, after denial of the petitioner's motion for a copy of his institutional record and denial, in part, of his motion to subpoena the above-referenced witnesses, the petitioner wrote a letter to the state court judge on January 15, 2008, indicating that, because of the denial of

"relevant discovery" and because his key witnesses had been "excluded by this Honorable Court," he was "having second thoughts about taking this case to trial" and wished to enter a plea. Id. at p. 76. As a result, the petitioner thereafter entered into a plea agreement with the State on January 22, 2008, pursuant to which the petitioner agreed to plead nolo contendere to the charged offense, reserving his right to challenge the judge's pretrial rulings on appeal, and the State agreed not to charge the petitioner as a multiple offender and, further, agreed to a sentence of one year in prison, with the sentence to run consecutively to any other sentence(s) which the petitioner was serving. The petitioner was thereafter sentenced in accordance with that agreement.

The petitioner perfected a timely appeal of his conviction and sentence, asserting in that appeal that the trial court had erred in permitting him to represent himself, in denying him discovery of his institutional record, in denying him the right to subpoena witnesses for trial, in denying his motion to quash the bill of information, and in failing to ascertain that there was a sufficient factual basis for his plea of nolo contendere. On February 13, 2009, the Louisiana Court of Appeal for the First Circuit affirmed the conviction and sentence. State v. Robinson, 5 So.3d 316, 2009 WL 382712 (La. App. 1st Cir. 2009). Upon a subsequent review in the Louisiana Supreme Court, however, that Court remanded the matter to the Court of Appeal with instructions that the intermediate appellate court:

> Address specifically defendant's assignment of error that the trial court erred by permitting him to assert his right to self-representation without assuring itself that defendant made a knowing and intelligent waiver of his right to counsel because "he kn[ew] what he [was] doing and choice [was] made with eyes open." Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (internal quotation marks and citation omitted); State v. LaFleur, 391 So.2d 445, 448 (La. 1980) ("There should be some indication that the trial judge tried to assess the defendant's literacy, competency, understanding and volition before he accepted the waiver of counsel.") (citation omitted).

6

State v. Robinson, 23 So.3d 926 (La. 2009).

Upon remand, the Louisiana Court of Appeal for the First Circuit reviewed the record and concluded that the petitioner had knowingly and voluntarily waived the right to counsel in the case and again affirmed the conviction and sentence.  See State v. Robinson, 42 So.3d 435 (La. App. 1st Cir. 2010).  Specifically, the appellate court found that the petitioner had "wished to represent himself in this uncomplicated matter for tactical reasons, i.e., 'to control his own discovery' and '[to] be able to control [his] defense,'" that the petitioner had "moved for self-representation at a pretrial stage of the proceedings," and that the petitioner had thereafter "entered into a favorable plea bargain."  Id.  The appellate court further noted that the trial court had previously advised the petitioner, at arraignment "of the nature of charge against him, of the nature of the proceedings, and of his right to counsel," that the trial court had determined the petitioner's age to be 36, that the trial court had before it "the benefit of numerous pro se motions filed by [the petitioner] demonstrating his literacy, competency, and understanding," and that the petitioner had extensive prior experience with the criminal justice system and was in fact serving a sentence for aggravated burglary at the time of the charged offense.  Id.  Finally, the appellate court noted that the trial judge had cautioned the petitioner that "if he represented himself he would lose the benefit of counsel."  Id.[1]  Based upon all of these factors, the appellate court concluded that the petitioner's waiver of counsel had been a voluntary exercise of the petitioner's informed free will and that the waiver had therefore been valid.  When the petitioner thereafter sought further review of this determination in the Louisiana Supreme Court, that Court

---

1. This specific "caution" does not appear in the colloquy between the petitioner and the state court.  Instead, the trial judge simply stated to the petitioner that, "if you're going to represent yourself in the case, I'm going to take Ms. Covington off the case and let you represent yourself ."

7

denied review on May 20, 2011, without comment.  See State v. Robinson, 63 So.3d 974 (La. 2011).

The petitioner filed the instant habeas corpus application on July 5, 2011.  There is no need for an evidentiary hearing or for oral argument.  Based on a review of the record in this case, the Court concludes that the petitioner's application should be granted.

In its response to the petitioner's application, the State first asserts that the petitioner has failed to exhaust state court remedies as mandated by 28 U.S.C. § 2254(b)(1)(A) relative to his claims.  Specifically, the State asserts that, although the petitioner raised his claims on direct appeal of the conviction and sentence in state court, he did not thereafter file an application for post-conviction relief in state court and assert the same claims.  This contention is clearly in error.  Pursuant to Brown v. Allen, 344 U.S. 443, 447 (1977), once the state courts have ruled upon a claim on direct appeal, it is not necessary for a petitioner "to ask the state for collateral relief, based upon the same evidence and issues already decided by direct review."  See also Myers v. Collins, 919 F.2d 1074, 1075 (5th Cir. 1990) (noting that "[a]t no time have we suggested that both avenues of relief [direct and collateral] must be pursued in order to satisfy the exhaustion requirement").  Accordingly, the State's argument in this regard should be rejected.

Turning to a substantive review of the petitioner's claims, the standard for review in this Court is that set forth in 28 U.S.C. § 2254.  Specifically relevant is 28 U.S.C. § 2254(d)(1), which provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision

8

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 364-65 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination. See 28 U.S.C. § 2254(d)(1)-(2); Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000), cert. denied, 532 U.S. 1067 (2001). Mere disagreement with the state court is not enough: The standard is one of objective reasonableness. Id. See also Williams v. Taylor, supra, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

  The law is clearly established that the Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the assistance of counsel before he can be validly convicted and punished by imprisonment. Faretta v. California, 422 U.S. 806, 807 (1975). A criminal defendant, however, has the unequivocal right to forgo the assistance of counsel and conduct his own defense. Id. Notwithstanding, the decision to proceed pro se must be made voluntarily, knowingly, and intelligently, and it is the trial judge' responsibility to ensure that this is the case. Specifically, a criminal defendant "must be warned specifically of the hazards ahead" and "should be made aware of the dangers and disadvantages of self-representation." Iowa v. Tovar, 541 U.S. 77, 88-89 (2004). These dangers and disadvantages

must be "rigorous[ly] conveyed" to the defendant, Patterson v. Illinois, 487 U.S. 285, 298 (1988), and to that end, the Fifth Circuit has stated that the trial judge "should engage in a dialogue" with the defendant to ensure that he knows what he is doing and his choice is made with eyes open.  Chapman v. United States, 553 F.2d 886, 892 (5th Cir. 1977).  See also Von Moltke v. Gillies, 332 U.S. 708, 723-24 (1948) ("To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand").[2]  In short, a defendant must be determined, not only to have voluntarily given up the right to counsel, but also to have done so with a full understanding of the dangers and disadvantages of self-representation.  See Moran v. Burbine, 475 U.S. 412, 421 (1986).[3]  In determining whether a criminal defendant has effectively waived his right to counsel, the court should consider the totality of the circumstances and must consider such factors as:

> the defendant's age and education, and other background, experience, and conduct.  The court must ensure that the waiver is not the result of coercion or mistreatment of the defendant, and must be satisfied that the accused understands the nature of the charges, the consequences of the proceedings, and the practical meaning of the right he is waiving.

McQueen v. Blackburn, 755 F.2d 1174, 1177 (5th Cir.) (citations omitted), cert. denied, 474 U.S. 852 (1985).  Although there is no formula, script or sacrosanct litany which must be read to a defendant, Iowa v. Tovar, supra, 541 U.S. at 88, the Fifth Circuit has approved the relevant

---

2. It is strongly recommended by the courts that the inquiry mandated by Faretta be conducted on the record so that it provides an adequate basis for appellate review.  See United States v. Virgil, 444 F.3d 447, 453-54 (5th Cir.), cert. denied, 549 U.S. 879 (2006).

3. In Patterson v. Illinois, supra, 487 U.S. at 299 n. 6, the Court elaborated on the dangers and disadvantages of self-representation, noting that "at trial, counsel is required to help even the most gifted layman adhere to the rules of procedure and evidence, comprehend the subtleties of voir dire, examine and cross-examine witnesses effectively ..., object to improper prosecution questions, and much more."

section of The Benchbook for Federal Judges as "an instructive guide for state court judges in respect of their ... constitutional obligations under Faretta."  Gross v. Cooper, 312 Fed. Appx. 671, 675 n. 1 (5th Cir. 2009).[4]  A reviewing court should indulge every reasonable presumption against the waiver of a fundamental constitutional right.  Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

In the instant case, in light of the minimal colloquy conducted by the state trial judge, this

---

4.  The recommended inquiry reads as follows and would be modified to reflect that the petitioner is charged with one or more state offenses:

(1) Have you ever studied law? (2) Have you ever represented yourself in a criminal action? (3) Do you understand that you are charged with these crimes: [state the crimes with which the defendant is charged]? (4) Do you understand that if you are found guilty of the crime charged in Count I the court must impose an assessment of $ 100 and could sentence you to as many as ___ years in prison and fine you as much as $ _____? [Ask defendant a similar question for each crime with which he or she may be charged in the indictment or information.] (5) Do you understand that if you are found guilty of more than one of those crimes this court can order that the sentences be served consecutively, that is, one after another? (6) Do you understand that the U.S. Sentencing Commission has issued sentencing guidelines that will affect your sentence if you are found guilty? (7) Do you understand that if you represent yourself, you are on your own? I cannot tell you or even advise you how you should try your case. (8) Are you familiar with the Federal Rules of Evidence? (9) Do you understand that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and that, in representing yourself, you must abide by those rules? (10) Are you familiar with the Federal Rules of Criminal Procedure? (11) Do you understand that those rules govern the way a criminal action is tried in federal court? [Then say to defendant something to this effect:] (12) I must advise you that in my opinion a trained lawyer would defend you far better than you could defend yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I strongly urge you not to try to represent yourself. (13) Now, in light of the penalty that you might suffer if you are found guilty, and in light of all of the difficulties of representing yourself, do you still desire to represent yourself and to give up your right to be represented by a lawyer? (14) Is your decision entirely voluntary? [If the answers to the two preceding questions are yes, say something to the following effect:] (15) I find that the defendant has knowingly and voluntarily waived his right to counsel. I therefore permit the defendant to represent himself [herself].

Court is unable to conclude that the petitioner's waiver of counsel was voluntary, knowing and intelligent within the meaning of Faretta. Specifically, the trial judge made no inquiry whatever into the petitioner's education, background or experience and made no attempt to advise the petitioner of the dangers and disadvantages of self-representation. See United States v. Jones, 421 F.3d 359 (5th Cir. 2005) (waiver deemed invalid where judge informed the defendant only that representing himself was "dangerous" but gave no further warnings regarding the pitfalls of self-representation); United States v. Davis, 269 F.3d 514 (5th Cir. 2001) (waiver deemed invalid where judge informed the defendant only that, by proceeding pro se, he might unintentionally implicate himself at trial, but otherwise relied on warnings given to the defendant by counsel); Gross v. Cooper, supra (waiver deemed invalid where judge provided no warnings whatever regarding the dangers of self-representation). Nor did the trial judge make any recommendation against self-representation, recommend that the defendant continue to utilize the services of his appointed attorney, engage in a dialogue with the petitioner, seek to ascertain that the petitioner understood the practical meaning of the right he was giving up, or offer the petitioner the benefit of standby counsel. See United States v. Jones, supra (waiver deemed invalid notwithstanding that judge strongly and repeatedly recommended that the defendant keep his appointed attorney, who was "extremely competent").[5] Although the State points to the judge's prior determination at arraignment of the defendant's age and "understanding" of the proceedings, to the defendant's apparent prior experience with the criminal justice system, to the fact that the defendant had filed motions which the court could review, to the pretrial stage of the proceedings, and to the

---

5. As noted above, the trial court completely disregarded the petitioner's request, in his Motion for Self-Representation, that he be provided with standby counsel to assist and advise him. Although the appointment of standby counsel is not constitutionally mandated, such appointment is preferred when a pro se criminal defendant seeks to represent himself. See McQueen v. Blackburn, supra, 755 F.2d at 1178.

subsequent "favorable" plea agreement all as militating in favor of a determination of voluntariness, this is an attempt to discern voluntariness from an after-the-fact recitation of mostly unrelated details, which details are not shown to have been evaluated by the trial court. Instead, this case more closely presents the situation faced by the Fifth Circuit Court of Appeals in Gross v. Cooper, supra, where the Court vacated a petitioner's conviction upon a finding that there had been a stark failure to abide by Faretta, both because "the trial court never warned the defendant of the dangers of self-representation at all" and "did not consider any background factors or engage in any dialogue to ascertain the defendant's awareness of the consequences or practical meaning of waiving representation."   As stated by the Court in that case, notwithstanding the deference owed to the state court on habeas review and notwithstanding the burden placed on the petitioner to overcome the presumption of correctness relative to the state court factual findings:

> Based on : (1) the Supreme Court's plain and clearly-established admonitions that the trial court rigorously warn the pro se defendant about the disadvantages of self-representation at trial and to inquire into the defendant's background before accepting his waiver of counsel; (2) the trial court's complete failure to warn [the petitioner] in respect to the dangers of self-representation at trial and its complete failure to inquire into [the petitioner's] background at all before accepting his waiver of counsel; and (3) the general presumptions against finding a valid waiver of constitutional rights, we conclude that the state's decision to find a valid waiver of counsel in this case was an "unreasonable application" of federal law.

Id. at 676.

In the instant case, as in Gross v. Cooper, supra, the trial judge did nothing whatever to satisfy the requirement of explaining to the petitioner the potential dangers of self-representation. Further, with regard to the Faretta-mandated inquiry into the petitioner's background and experience, all that appears from the record is that the trial court ascertained, at an unrelated arraignment proceeding conducted two weeks previously, that the petitioner was 36 years old

13

and "understood the nature of the proceedings."  In the Court's view, this was not sufficient.  Nor was it sufficient that the trial court was aware simply that the petitioner was a convicted felon and so presumably had experience with the criminal justice system.   Nor was it sufficient that the petitioner had presented hand-written pro se motions for filing on the date of the hearing.  These motions could have been prepared by or with the assistance of inmate legal assistants, and there is no indication in the record that the motions were reviewed by the court prior to its ruling as to self-representation or that they were utilized by the court to evaluate the petitioner's competency and literacy.

Further, the mere fact that the waiver of counsel occurred during a pretrial stage of the proceedings is not determinative.  Although it has been recognized that the stage of proceedings at which counsel is waived is a factor which may be considered in evaluating the validity of a waiver, with pretrial or sentencing proceedings not always requiring the same level of inquiry as trial proceedings, see Iowa v. Tovar, supra, 541 U.S. at 88-89, the Court is not persuaded that this factor carries any particular weight in this instance.  In Iowa v. Tovar, where a criminal defendant had been allowed to waive counsel at a guilty plea hearing conducted shortly after arrest on a charge of driving while intoxicated, the Iowa Supreme Court reversed the conviction upon a finding that the Faretta inquiry and warnings had not been sufficient.  Upon review, the United States Supreme Court remanded, not upon a substantive review of the voluntariness of the defendant's waiver, but only upon a finding that certain highly specific warnings which had been deemed mandated by the Iowa court were not constitutionally required to support the waiver in that case.  In making this determination, the Court noted that the stage of proceedings could be considered in determining the nature and extent of the warnings required.  The Court also noted in that case that the defendant was provided with a full Boykin colloquy on the same

date and at the same hearing that he waived counsel, and so had been fully advised of the nature of the charges and penalties he faced and of the many rights which he was relinquishing by pleading guilty.  See also Patterson v. Illinois, 487 U.S. 285 (1988) (concluding that during early post-indictment pretrial questioning by law enforcement officials, a waiver of counsel was sufficiently protected by the giving of Miranda warnings); United States v. Lopez, 426 Fed. Appx. 260, 262 (5th Cir.), cert. denied, ___ U.S. ___, 132 S.Ct. 358 (2011) (upholding waiver of counsel without Faretta warnings at initial appearance proceedings).  In the instant case, in contrast, although the petitioner sought to waive counsel at a so-called early stage of the proceedings, he faced the entirety of discovery, of motion practice and of preparation for trial without the benefit of counsel, and it was not until months later, after participating in continuing proceedings without an attorney and only after anticipated discovery and witnesses were disallowed by the trial court, that he finally entered into an uncounseled plea agreement.  In such instance, the pretrial nature of the proceedings should not be seen to dispense with the need for an adequate Faretta inquiry.  See United States v. Virgil, supra, 444 F.3d at 453 (recognizing that, whereas the stage of proceedings may be a relevant factor in determining the nature and extent of Faretta warnings, "[i]t does not ... eliminate the need for the district court to make an inquiry sufficient to support a finding that the waiver of counsel is voluntary, knowing and intelligent").

     Finally, the mere fact that the petitioner ultimately entered into a plea agreement which the State characterizes as favorable is not an indication that his waiver of counsel was legally valid.  In United States v. Virgil, supra, the government similarly sought to extrapolate from an after-the-fact analysis of "aspects and inferences" taken from the record, including the defendant's age, education and general competence, in an effort to avoid reversal where no

Faretta colloquy had been undertaken.  In rejecting this argument, the Court concluded that "the government cannot belatedly remedy the district court's error in failing to insure that [the defendant] knowingly and intelligently waived his rights."  Id. at 454.  Similarly, the petitioner's plea agreement in the instant case cannot realistically be seen to be a factor tending to establish that his waiver of the constitutional right to counsel was made with eyes open and with a full understanding of the dangers and pitfalls of self-representation and of the practical meaning of the right which he was relinquishing.  For this reason, together with the foregoing reasons, the Court finds, as in Gross v. Cooper, supra, that "the state's decision to find a valid waiver of counsel in this case was an 'unreasonable application' of federal law," id. at 676, and that the petitioner, therefore, is entitled to habeas corpus relief.[6]

## RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be granted, that his state court contraband conviction be vacated, and that this matter be remanded to the state court for further proceedings consistent with the Court's findings.

Signed in Baton Rouge, Louisiana, on September 20, 2013.

  _____
  RICHARD L. BOURGEOIS, JR.
  UNITED STATES MAGISTRATE JUDGE

---

6. The error in this case is not susceptible of a harmless error analysis, see United States v. Virgil, supra, 444 F.3d at 456.  Accordingly, having concluded that the petitioner's conviction must be overturned based upon the referenced Faretta violation, the Court need not address the petitioner's additional contention that the state trial court impermissibly interfered with the presentation of his case.